UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHARLES EDWARD KISSLING,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

Case No.  1:15-CV-0807

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Charles Kissling seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.234, 263.) He graduated high school, completed some college classes, and was previously employed as a construction worker and group leader. (PageID.265, 287.) Plaintiff applied for DIB on September 21, 2011, and SSI on December 18, 2011, alleging that he had been disabled since March 5, 2009, due to inflamed joints, back surgery, poly septic arthritis, pain in his back, mini seizures, depression, and kidney stones. (PageID.293, 310, 433–448.) Plaintiff's applications were denied on June 12, 2012, after which time he requested a hearing before an ALJ.

(PageID.332–339, 344–349.) On February 5, 2014, Plaintiff appeared with his counsel before ALJ Donna Grit for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.255–291.) In a written decision dated March 14, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.234–254.) On June 8, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–30.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.239.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) obesity; (2) inflammatory and degenerative arthritis of multiple joints including bilateral knees, shoulders, and left ankle; (3) fibromyalgia; (4) lumbar and cervical degenerative changes; (5) status post lumbar laminectomy; (6) epicondylitis; and (7) depression. (PageID.239–240.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.241–242.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can stand and walk for two hours and sit for six hours per eight-hour workday. He can push and pull with the upper and lower extremities less than frequently. He can balance, kneel, crouch, crawl, and climb ramps and stairs less than frequently but never climb ladders, ropes, or scaffolds. He can overhead reach or handle with the right upper extremity only frequently. He must avoid concentrated exposure to hazards such as unprotected heights and dangerous, moving machinery. He can understand, remember, and perform simple tasks, make simple, work-related decisions, and adapt to routine changes in the work

> environment. He is limited to only frequent interaction with coworkers and the public.

(PageID.242.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.246.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following positions that Plaintiff could perform: assembler (2,400 jobs in Michigan and 28,000 national jobs), inspector (700 jobs in Michigan and 13,000 national jobs), and machine operator or tender (1,300 jobs in Michigan and 44,000 national jobs). Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.247.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his alleged disability onset date through the date of decision. (PageID.247–248.)

## DISCUSSION

### 1. The ALJ Properly Evaluated Plaintiff's Fibromyalgia.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence under the Commissioners rulings concerning claimants with fibromyalgia. (PageID.1880–1883.) Social Security Ruling 12–2, Evaluation of Fibromyalgia, "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [the Commissioner] evaluate[s] fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12–2p, 2012 WL 3104869 at *1 (S.S.A. July 25, 2012). As is well recognized, the cause of

fibromyalgia is "unknown" and "its symptoms are entirely subjective." *Fowler v. Colvin*, 2014 WL 4840582 at *4 (S.D. Ind., Sept. 29, 2014) (citation omitted). The use of the term "subjective" in this context "is not intended to be disparaging but only descriptive" and simply reflects that "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Id.* (citations omitted). Accordingly, when assessing the residual functional capacity of a claimant suffering from fibromyalgia, the ALJ must do more than simply point to the results of objective testing. SSR 12-2p, 2012 WL 3104869, at *6.

"[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits."); *see also Infantado v. Astrue*, 263 F. App'x 469 (6th Cir. 2008); *Arnett v. Comm'r of Soc. Sec.*, 76 F. App'x 713 (6th Cir. 2003). "'Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [the claimant] is one of the minority.'" *Vance,* 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see Archer v. Colvin*, No. 1:13–cv–18, 2014 WL 457641, at *5 (D.Me. Feb. 4, 2014) ("[N]ot every suggestion of fibromyalgia requires a conclusion that the condition is 'severe' or that it results in disability."); *Placke v. Colvin*, No. 4:12–cv–87, 2013 WL 5303746, at *4 (S.D.Ind. Sept.19, 2013) (same).[2]

---

[2]For this reason, Plaintiff's argument regarding Dr. Wendy Marder is rejected. Plaintiff claims the ALJ "never evaluated the reports of Dr. Marder," his treating rheumatologist. Plaintiff has failed to identify, however, either in his argument section or his statement of facts, a medical opinion from Dr. Marder. Rather it appears that Plaintiff argues Dr. Marder's mere diagnosis of fibromyalgia (PageID.1830) entitles him to benefits. But as pointed out above, this is not the case. Moreover, the ALJ did not "ignore" the records as Plaintiff claims. As the Commissioner, points out, the ALJ indeed cited to an April 20, 2011 note from Dr. Mulder. (PageID.243, 599–600.) The

Plaintiff places great emphasis on the Sixth Circuit's decision in *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007). He argues that under this case, opinions from physicians in fibromyalgia cases that are "based solely upon so-called objective evidence are not particularly relevant," and further claims that in this context, "opinions of treating physicians deserve even more credence." (PageID.1882–83.) But while Plaintiff correctly states that in fibromyalgia cases, an ALJ may not minimalize the severity of fibromyalgia based solely on objective testing, *Rogers* does not require any further deference to medical opinions beyond that already found in the regualtions. *Id.* at 243–46. Finally, for reasons examined in greater detail in the next section, the ALJ's opinion did not violate the treating physician rule and moreover did not rely solely on objective evidence in discounting the physician's opinions. Accordingly, the Court finds no error in the ALJ's consideration of the evidence regarding Plaintiff's fibromyalgia.

### 2.     The ALJ Properly Evaluated the Opinion Evidence.

Plaintiff next claims the ALJ erred by "failing to properly consider the evidence from treating and consulting physicians." (PageID.1880.) It appears Plaintiff is arguing the ALJ failed to give appropriate weight to the opinion of Dr. Gretchen Goltz, his primary care physician, Dr. David Krencik, a treating pain specialist, and Dr. Dennis Mulder, a consulting psychologist.

---

failure to more fully discuss Dr. Marder's treatment notes is not, in and of itself, an error requiring reversal. "Neither the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010). "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that: '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) (citations and internal quotation marks omitted). Accordingly, Plaintiff's argument regarding Dr. Marder is rejected.

(PageID.1880.)  The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 375–76.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

   A.  Dr. Goltz

On January 23, 2014, Dr. Gretchen Goltz filled out a medical source statement (MSS) regarding Plaintiff's physical limitations.  She also provided a supporting letter detailing Plaintiff's diagnoses.  (PageID.1705, 1707, 1709–1714.)  Among other things, Dr. Goltz opined that Plaintiff could never lift or carry any weights, even those under ten pounds.  (PageID.1709.)  Plaintiff could only sit, stand, and walk each for only thirty minutes at any one time.  Moreover, he could only sit, stand, or walk each for a total of one hour.  For the remainder of the day, Plaintiff would need to rest in a recliner.  (PageID.1710.)  Plaintiff could never use his right hand for reaching, handling, fingering, feeling, pushing, or pulling.  She declined to provide an opinion on Plaintiff's use of his

9

left hand. (PageID.1711.) Plaintiff could never operate foot controls. (PageID.1711.) Furthermore, Plaintiff could never climb stairs, ramps, ladders, or scaffolds, and could never balance, stoop, kneel, crouch, or crawl.  Dr. Goltz noted that Plaintiff would not be able to get up from those positions. (PageID.1712.)  Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, could not use standard public transportation, and could not sort, handle, or use paper or files. (PageID.1714.) Finally, Dr. Goltz stated that Plaintiff's limitations had been present for at least eight years. (PageID.1714.)  She opined that she did not "feel that he will be able to sustain work on a consistent basis." (PageID.1707.) Plaintiff could be expected to miss work at least once a week, and would be "incapable of working an 8 hour day, 40 hours per week with breaks."  (PageID.1707.)

> The ALJ assigned the opinion only "little weight" because of the opinions':
>
> inconsistency with the record as a whole.  Specifically, despite being the treating physician of the claimant, she notes that the claimant has been limited for eight years, which is before his alleged onset date and during the time period in which the claimant continued to work. This opinion is also inconsistent with the claimant's own subjective accounts of what he is capable of (i.e., repair work at his mother's home that involves lifting of sixty pounds).

(PageID.245.)  The parties do not dispute that Dr. Goltz qualifies as a treating source, accordingly the ALJ was required to provide good reasons for discounting the opinion. *Gayheart*, 710 F.3d at 376. The ALJ has done so here.  Dr. Goltz stated that Plaintiff's limitations were present for the past eight years, or since 2006.  But Plaintiff testified to being able to go hunting in 2007.  (PageID.264.) He worked through 2008 as a self-employed residential contractor. (PageID.267.)  The ALJ did not err in noting that Plaintiff's ability to perform substantial gainful activity was inconsistent with the doctor's opinion regarding Plaintiff's abilities during that period.  Moreover, contrary to Plaintiff's assertion that he is only able to perform "some household chores and occasional odd jobs"

(PageID.1882), the record shows that Plaintiff went to the ER on October 6, 2010, and stated that he was "using a grinder routinely" as part of his work. (PageID.1148.) On June 7, 2011, Dr. Patricia Heron wrote to Dr. Goltz and stated that Plaintiff met the criteria for a surgical procedure, but that "he would like to have his procedure done in November 2011 after his work slows down since he is a self-employed construction worker." (PageID.909.) On other occasions, Plaintiff stated he had disassembled a motor home, and lifted a sixty-pound well pump (PageID.1151, 1604.) As the ALJ found, these records reflect an ability to perform activities far greater than the limitations imposed by Dr. Goltz. Accordingly, substantial evidence supports the ALJ's decision to give only little weight to Dr. Goltz's opinion.

      B.      Dr. Krencik.

On February 13, 2014, Dr. David Krencik, Plaintiff's treating pain specialist, gave a statement to Plaintiff's counsel. Dr. Krencik stated that he had been treating Plaintiff for pain in his cervical and lumbar spine, and that his working diagnoses were central canal stenosis, radiculopathy, degenerative discs, and cervical spine pain. (PageID.1786–1787.) Among other things, Dr. Krencik opined that Plaintiff could be expected to miss work more than three times a month. (PageID.1793.) It would be highly likely that Plaintiff would need unscheduled breaks. (PageID.1793.) Ultimately, Dr. Krencik believed that Plaintiff could only return to light duty part-time work. (PageID.1793–1794.) The ALJ gave "partial weight" to Dr. Krencik's opinion:

> as it is not entirely consistent with the claimant's own daily activities. Dr. Krencik says that the claimant cannot sustain full-time work and any part-time work must be done at a light level of exertion. However, it is clear that the claimant has continued to engage in activities requiring significant exertion (i.e., construction, deconstructing a motor home, home repairs.) Dr. Krencik also fails to acknowledge that his own clinical observations and findings show that the claimant's signs and symptoms are actually intermittent.

(PageID.245.)  The parties do not dispute that Dr. Krencik's opinion is subject to the treating physical rule.  The Court finds the ALJ has complied with the rule here.  The ALJ correctly noted that Dr. Krencik's opinion was inconsistent with the Plaintiff's reported daily activities.  As noted above, this determination is supported by substantial evidence. The ALJ also noted that the doctor's opinion was inconsistent with his own treatment notes.  The record shows that Plaintiff reported "very good relief" from injections (PageID.1356.)  He reported pain relief of up to seventy percent.  (PageID.1658.)  On January 20, 2010, Dr. Krencik noted he had previously written a note that Plaintiff was able to work with pain medication.  (PageID.648.)  All this is inconsistent with the doctor's later statement.  Accordingly the ALJ gave good reasons, supported by substantial evidence for giving Dr. Krencik's opinion less than controlling weight.

Plaintiff appears to claim that as a pain specialist, the ALJ was required to give more weight to Dr. Krencik's opinion.  Plaintiff is correct that the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5). 416.927(c)(5); *see also Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). But it is by no means as rigid a rule as Plaintiff apparently would prefer.  Rather, the specialization of an examining relationship is only one of the factors an ALJ is to consider when weighing medical opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  The ALJ is responsible for weighing conflicting medical opinions.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire

administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). The ALJ found Dr. Sheill's opinion was consistent with the record while Dr. Krencik's opinion was not. (PageID.245.) The Court finds the ALJ did not err here.

Accordingly, substantial evidence supports the ALJ's decision to give only partial weight to Dr. Krencik's opinion.

        C.      Dr. Mulder

On January 30, 2014, Dr. Dennis Mulder, a consultative examiner, performed a psychological evaluation of Plaintiff and filled out a MSS of Plaintiff's mental limitations. Among other things, Dr. Mulder found that Plaintiff was moderately limited in his ability to understand and remember simple instructions. He had mild limitations regarding his ability to carry out those instructions and to make judgments on simple work related decisions. With regard to complex instructions and judgments, Dr. Mulder found Plaintiff was markedly limited. (PageID.1723.) Dr. Mulder also found that Plaintiff had marked limitations regarding his ability to interact appropriately with the public, supervisors, and co-workers, and furthermore had marked limitations regarding his ability to respond appropriately to usual work situations and to changes in a routine work setting. (PageID.1724.) Dr. Mulder concluded by noting:

> [t]he potential for the patient becoming gainfully employed in a simple, unskilled work situation on a sustained and competitive basis is very guarded. The combination of his physical distress, along with his clinically significant psychological distress greatly interferes with his ability to function at a level necessary for him to obtain and maintain full-time gainful employment. It is my opinion that the patient meets the Listings at 12.04, and that he has been unable to work on a sustained basis since March of 2009.

(PageID.1721.) The ALJ gave Dr. Mulder's opinion "no weight:"

> The claimant has been diagnosed with depression by his primary care physician. Many progress notes find a good and even a great mood at times. Overall, there is insufficient evidence to support this opinion that is based on a one time mental status examination that took place on January 30, 2014 at the request of the claimant's legal representation.

(PageID.245.) The treating physician rule did not apply to any of Dr. Mulder's opinions, because he was a consultative examiner. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky*, 167 F. App'x at 506. Because Dr. Mulder was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). While the record does demonstrate that Plaintiff suffers from depression, the ALJ adequately accounted for it by finding such to constitute a severe impairment and considering it in the RFC discussion. Dr. Mulder's extreme opinion is not supported by the record that, while finding Plaintiff suffered from depression, found an appropriate mood, and no suicidal ideations. (PageID.740, 818, 1355, 1376, 1421.)

For all the above reasons, this claim of error is denied.

### 3.      The ALJ Properly Evaluated Plaintiff's Depression.

At the hearing, Plaintiff testified that he would spend the majority of his time in bed and often lacked energy. He further testified that he believed this was due to his depression. (PageID.284.) While the ALJ found that Plaintiff's depression was a severe impairment (PageID.239) she discounted his allegations because:

> Unfortunately, the claimant has not consulted or even required the care of, a psychiatrist or psychologist, as he has only made complaints to his primary care physician; his primary care physician has prescribed medication for symptoms control, and also recommended that he seek further care but that the claimant has not followed such

> medical advice. Even then, these complaints are only intermittent and findings are rather limited to mood swings, especially depressed mood, and some anxiety. He otherwise maintains normal judgment and attention, and suicidal ideations are not a concern. He has never required psychiatric hospitalization or emergent care.

(PageID.245.)

Plaintiff contends that the ALJ rejected his subjective complaints without considering his ability to afford treatment contrary to SSR 96–7p, which instructs an ALJ not to draw inferences about a claimant's credibility based upon the failure to obtain medical treatment without first considering the claimant's explanation for that failure. SSR 96–7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996.)[3]

In support of his argument, Plaintiff notes that he testified he was unable to travel across the state to visit Dr. Marder. (PageID.272, 1883.) Dr. Marder never treated Plaintiff for his mental impairments, however, and when questioned by the ALJ specifically as to depression, Plaintiff mentioned that Dr. Goltz had given him a list of mental health physicians, but he had not yet contacted any of them for his depression. No mention about lack of finances was made. (PageID.285.)

The Court concludes that there is no compelling reason to disturb the ALJ's credibility determination. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) The record reflects that while the ALJ drew an inference that Plaintiff was not credible for failing to obtain treatment

---

[3] Effective March 28, 2016, SSR 96–7p was rescinded and superseded by SSR 16–3p. *See* SSR 16–3p, 2016 WL 1119029, at *1 (S.S.A. Mar. 16, 2016). Since the ALJ's decision is dated prior to March 28, 2016, the ALJ appropriately considered SSR 96–7p in her decision. Moreover, the Court notes that SSR 16–3p does not appear to have substantively changed the Commissioner's policy on this point. *See* SSR 16–3p, 2016 WL 1119029, at *9 (noting that in considering a claimant's treatment history, the Commissioner will consider, among other things, the claimant's ability to afford treatment).

of his depression, the ability to obtain medical treatment was discussed at the administrative hearing, and Plaintiff made no mention of it in regard to his mental impairments. In any event, the ALJ noted that aside from his failure to persue treatment, Plaintiff received treatment for only minimal complaints from Dr. Goltz, and as noted above, his the record does not substantiate the severity of Plaintiff's allegations. Thus even if the ALJ erred here, she provided other reasons for discounting Plaintiff's allegations. Accordingly, Plaintiff's claim of error will be denied.

    **4.    The ALJ's Step Five Determination is Supported By Substantial Evidence.**

Plaintiff makes two arguments regarding the ALJ's step five determination. Plaintiff first argues the ALJ could not rely on the VE's answers in response to the ALJ's hypothetical because the limitations in the hypothetical were unsupported by substantial evidence. (PageID.1884.) Plaintiff's argument regarding the propriety of the hypothetical presented to the VE is premised on his contention that the ALJ erred in defining his RFC for reasons argued above. (PageID.1884.) Given that the Court has found the ALJ did not err in assessing Plaintiff's fibromyalgia, the medical opinions, or Plaintiff's credibility, the Court need not further address this argument.

Plaintiff also claims that the ALJ's determination that Plaintiff was capable of performing 4,400 jobs in Michigan and 85,000 jobs in the nation did not amount to a significant number of jobs. (PageID.1884.) As noted above, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones*, 336 F.3d at 474.

In order to satisfy the burden, the ALJ consulted a VE at the hearing. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available

in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As the Sixth Circuit explained, the burden can be met by looking to the jobs available in either the regional economy or the national economy:

> The Social Security Act, as amended, provides that "work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The Commissioner is not required to show that job opportunities exist within the local area. *Dressel v. Califano*, 558 F.2d 504, 508–09 (8th Cir. 1977).

*Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999).

The gravamen of Plaintiff's claim here is that the 4,400 regional and 85,000 national positions identified by the ALJ and VE is too little. (PageID.1884.) In support of this claim, Plaintiff relies on *Cain v. Comm'r of Soc. Sec.*, No. 1:14-CV-463, 2015 WL 4393987, at *8 (W.D. Mich. July 16, 2015). In that case, Magistrate Judge Brenneman found that 450 positions in the State of Michigan and 12,400 positions in the nation were not a significant number of jobs. *Id.* According to Plaintiff, the difference between 450 and 4,400 is inconsequential when compared to the over four million jobs in the state. (PageID.1884.)

Courts "cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Instead "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* The judge may consider factors such as: the VE's; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.*

Utilizing the above factors, in *Cain*, Judge Brenneman gave a number of reasons that the total jobs in the region and nation did not amount to a significant number. In addition to the relatively small number of jobs, Judge Brenneman noted the VE was only able to identify two jobs as positions Plaintiff could perform, and also noted the specialized nature of one of these positions–a final assembler of optical goods. *Id.*

Here, consideration of these factors cuts the other way. The VE in this case was able to identify three jobs in response to the ALJ's hypothetical, consisting of over 4,000 positions in the state, and 80,000 positions in the nation–well above the number in *Cain*. The positions of assembler, inspector, and machine operator or tender are also not so isolated or of the type such that one might expect the availability of such work to be sparse. An ALJ "must tailor the determination of what is significant to the facts of each claimant's case." *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016). The Court finds the ALJ has done so here, and the VE testimony provides substantial evidence supporting her decision that a significant number of jobs exist that Plaintiff is capable of performing.

Accordingly, Plaintiff's claim of error is rejected.

## **CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Date:   August 4, 2016               /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE